Good morning, everyone. Good morning. Happy Valentine's Day. Oh, yes, indeed. Happy Valentine's Day to everyone. And everyone in the courtroom should understand that you are all our Valentines, because without you, where would we be? In any event, it is our first case of the day. Case number one is Doe v. Board of Regents of the University of Wisconsin System. And Ms. Brodsky, you may begin anytime. Thank you, Your Honor, and may it please the court. I'm Alexandra Brodsky for Appellant Jane Doe. Jane is a smart and resilient young woman. When she was sexually assaulted by a classmate and then faced a hostile environment on campus, she managed to keep her grades up. But contrary to the district court's order, she still missed out on educational opportunities and benefits that Title IX protects. The record contains evidence that Jane withdrew from university life. She missed classes because she was too afraid to leave her room, went home on weekends, took easier and fewer courses, avoided campus facilities like the Student Union, disengaged from extracurriculars, and more. That's enough for Jane to defeat summary judgment. What makes this all more... Ms. Brodsky, forgive me, but just to clarify, is the relevant time period on which we should focus in terms of a hostile environment the six to seven months from the filing of Player One's petition for readmission to when the university went to remote learning in March of 2020? Your Honor, I think that that's correct, though the relevant time period varies a little bit based on what element is in question. So for example, in determining whether the harassment was sufficiently serious to deprive Jane of educational opportunities, all of the educational deprivations from the assault onward, including her immediate return home after the assaults count. But when we're talking about what harm the school's deliberate indifference caused, I think the key period there is really going to be what happened after the reinstatement. That's a very interesting point. I've been wondering about this question, and I wonder how do you get that? Is there any support in the law for your position? Because it seems to me like what you're trying to do is take the elements, and you've got Bucket One, okay, and Bucket One is the sex assault all the way through the expulsion. Bucket Two is the reinstatement, and she clearly withdrew. Bucket Two is the reinstatement. But what you want to do is say the university was not deliberately indifferent in Bucket One, but let's take the sex assault from Bucket One, drop it into Bucket Two, and now say the university was deliberately indifferent in Bucket Two. How can you do that? What support is there in the law for that, that when analyzing the elements, we should ignore everything that the university did in its original investigation? Your Honor, I don't think that the court should ignore everything the university did in its initial investigation, and the district court didn't either. Then how was the university deliberately indifferent? I don't understand. I guess I have trouble with the district court's order in this, but I don't know how you get around that. Davis is a very narrow opinion. Davis is very explicit, as our court has been most recently in the Madison case. We talk about deliberate indifference is ignore. Deliberate indifference basically equals ignore, do nothing. Here the university did substantial investigation and ultimately led to the expulsion of Player One. By the way, I don't know why we're using these pseudonyms in this case. I guess that's an issue for another day. We're not a secret court. We don't litigate in secret, and everybody knows who Player One is. He was on trial. He was charged with a crime, and there was a jury trial. How do you say that the university was deliberately indifferent? Your Honor, Davis says that a school is deliberately indifferent if its response is clearly unreasonable under the known circumstance. Every court to have considered whether that has said yes, more than just something is involved, and that's the second, fourth, the fifth, all of the sister circuits that have addressed this issue. I agree that the facts here are unusual. I'm not aware of another case where a school has done a good thing and then taken it back in this way, but I think that talking about the C.S. versus Madison case, the way that this court framed deliberate indifference there was this response reasonably calculated to address the problem, to protect the student. But Davis says failure to respond, remain idle. We won't second-guess the disciplinary decisions made by school administrators. It consistently uses the same language. So how did the university have a no-contact order in place, and they conducted this thorough investigation? I'm just concerned that what you're trying to do under Title IX is basically conflate all of the factors, and if the university doesn't do exactly what you think they should do, you get to a jury. Your Honor, I don't think that that's correct. Davis is clear that schools have a number of options. They can choose between the available reasonable options, and I think that a jury could find here that the deliberate indifference was particularly obvious using that reasonably calculated frame from C.S. because the school, when we're talking about the reinstatement onward, wasn't trying to do right by Jane. It wasn't trying to address the problem. It was trying to advance its own pecuniary and reputational interests at the knowing cost to her. Where is your evidence of that? Who testified to that? What document says that? I understand that you speculate based upon donors' wish to have the football player back on the field and things like that, but what witness testified that weighed in to the decision-making process, or what document? You can't, you know, if you were going to trial, this is under, I think it's probably irrelevant under 401. You can't speculate. There has to be a witness or a document that supports it, so what evidence can you point to that supports it? Your Honor, I don't think it's speculation. I think a jury could find that there is sufficient evidence establishing that this was the school's motive, even if we don't have a witness saying, you're right, we were only doing this for fundraising. And I think that that includes that, so the university had specifically found that Jane would find a hostile environment and that player one's presence had already disrupted her education. It knew that he had violated the no-contact order. It knew that he had a past disciplinary history where warnings hadn't sufficed. And they knew that he had been willing to violate the no-contact order at a time where it was far riskier to her. And then if a jury were to look at the school's quote-unquote decision-making, they might see that the school wasn't grappling with the evidence, wasn't able to justify its decision in an evidence-based way. And we know from Davis and from cases like Johnson and... What is your evidence of that? I mean, what is the evidence of that, other than donors wanted this football player back on the field? Your Honor, I think the evidence includes... Is there any testimony? Your Honor, there is documentary evidence that the school was rushing the proceeding because of the football schedule. What, what, what specifically? What is the evidence that the school rushed the decision? There's a post-it note from the prosecutor from his conversation with the school where the... She said that you didn't need transcripts, right? Because his newspaper article every day about the trial, the jury deliberated for 30 minutes. Your Honor, I think that the acquittal itself doesn't determine whether an infraction under the school's disciplinary code occurred. And the Chancellor herself acknowledged that. And as this court is aware, there are many reasons why someone might be acquitted from a criminal charge and still have violated the school's disciplinary... I'm with you there. I want to get back to my The university conducts this thorough investigation, which results in the expulsion of Player One. After the acquittal, would it have been unreasonable for the Chancellor to simply write a letter to Player One's attorney that says the following, you are hereby reinstated, period. Would that have been clearly unreasonable? And you see what I'm getting at is you, I think what you're trying to do is tell us, ignore everything that happened up to the reinstatement and just consider what the university did when they reinstated Player One. And what I'm trying to get is what is the legal support for that? Because I think that blows the doors right off of Title Nine, maybe Title Seven and all other civil rights laws. What is the legal support for us to do that? So, Your Honor, we know that a school's decision-making matter, and I think that that's clear from two case lines. So we have cases like Davis that say that if a school does nothing, if they receive a report, do nothing with it, don't investigate, that's deliberately indifferent. And then we also know from cases like this, Fort Johnson, from the First Circuit's Fitzgerald, Fourth Circuit's Fairfax, that if a school does a reasonable investigation, says, look, I'm sorry, we just don't have enough evidence to substantiate your claim, that won't be deliberately indifferent. So what that means is how a school gets to its remedy, how a school gets to its conclusion matters. And that's consistent with a deliberate indifference frame. Can you tell me this, Ms. Brodsky, if this case were to reach a jury, would the jury be bound by Chancellor Block's 2019 finding that Player One did not sexually assault her? And would its focus be limited to the reasonableness of the process the university followed in handling the readmission petition? And what the university did or did not do for Ms. Doe after deciding to readmit Player One? Or would the jury be free to make its own factual finding as to the assault? And how would the fact that after, that she was not permitted, she and her lawyer were not permitted, to rebut any of the new evidence that came into the hearing and 13 days later, Player One was readmitted? Your Honor, the jury would not be bound by that determination. It would have to find that Jane had been sexually harassed. That's an element of her claim. But it would not be bound by the Chancellor's finding on that. And you're right that the focus for the jury in terms of deliberate indifference would be the reasonableness of the process, the sham process to readmit Player One. But I would say it's not just about the disciplinary decision. Isn't that a negligence standard? No, Your Honor. It's not? I mean, reasonableness to me sounds like negligence, not deliberate indifference. Your Honor, reasonably calculated is the language that this court used in CS. I think that Jane could also prove a claim if the question was, was the school's response clearly unreasonably calculated. The last thing I just wanted to say before I reserve the rest of my time is that Title IX is a civil rights statute about protecting education. It's not a statute about punishment. So the question here was not just what was the correct, how long did Player One have to be away from campus, if at all, it's what was the school doing to protect Jane's with the school to provide her with reasonable protective measures so she could go to class, enjoy university life. And they said, essentially, if you're assaulted again, call 911. And if I may, I'll reserve the rest of my time. Thank you. Thank you, Ms. Brodsky. Oh, Mr. Whitney. Hello, Mr. Whitney. Hello. And good morning. And may it please the Court, John Whitney on behalf of the University of Wisconsin Board of Regents. It's important. I'm going to start you right out because I'd like you to help me with something. Why was Judge Connolly not right about there being a fact issue as to whether the university handled Player One's petition for readmission in a reasonable way? The university excluded Doe and her counsel from the process. Despite the fact that it allowed Player One and his counsel to participate, there was new evidence submitted in support of the petition that Ms. Doe and her counsel could have addressed, but they were not given that opportunity. Regardless of what was or was not required by the university rule, could a jury find that the university's process reflected deliberate indifference to the consequences for Ms. Doe in reaching the decision to readmit Player One without allowing her and her lawyer to be part of that situation? The answer to this is no, Your Honor, and there's a few reasons for that. So the reason Chancellor Blank didn't solicit Jane Doe's response to Player One's petition, there's a reason for that. The first is, as you mentioned, the state procedure that that readmission process was under did not provide for the complainant's participation. And if Chancellor Blank, I think what Chancellor Blank felt is if she would have allowed that to the other side, Player One in this case would have cried foul for her going beyond the state procedure and engaging in some extralegal procedure that Doe now says she would have preferred happened there. The other reason Chancellor Blank didn't solicit a response from Doe at that point was because she intended to treat like cases alike. So there had been petitions for readmission before, and in fact another petition for readmission from a student who had been expelled for a non-academic misconduct. And in that petition, Chancellor Blank received the petition, reviewed it, made up her mind, made a decision, and did not solicit the complainant's response there. And so I think what Chancellor Blank wanted to do was follow the law that she was, that governed that process, and to treat like cases alike. And so I don't believe it would have been, it was deliberately indifferent for her not to solicit the response. And I think that there were people, I want to be clear about this, there were people in the office at the university that had a different opinion from the Chancellor. So the Title IX officer at the university, when she talked to the Chancellor during the petition process, she thought that Chancellor should reach out to Doe for a response. Mr. Whitting, are you aware of any case that holds in any, with respect to any deliberate indifference standard, are you aware of any case that holds following the law could result in deliberate indifference? No, I'm aware of no case that says that, Your Honor. I'm not either. I looked and I found one because I had the same question that Judge Rovner had, which is they didn't require, or they didn't allow the plaintiff to participate, they didn't allow anybody else to participate, they didn't seek rebuttal, they didn't do anything. But I think the law has changed since then, but at the time the law did not require it. That's right. The particular state regulation that she was following at that point did not provide for the complainants, for Doe's response. And I think it's helpful to think about what we're reviewing that decision of Chancellor Blank's for. So we're not reviewing her decision to not solicit the response or her decision on the petition de novo. We're not even reviewing it for clear error. We're reviewing it for deliberate indifference. And what this court said in CS v. Madison Metro is that deliberate indifference is an act that's clearly unreasonable under all circumstances and so clearly unreasonable that it constitutes an official decision to permit discrimination. That's what deliberate indifference means. And I think my friend on the other side, she wants to distance herself from the Seventh Circuit precedent. And what the Seventh Circuit said is deliberate indifference means in essence that a school learned of a problem and did nothing about it. And I think... What about the university's decision not to take any additional steps to protect Ms. Doe once Player 1 was readmitted? Couldn't a jury find that that reflected the university's deliberate indifference? You know, in fact, if you really take a close look, the university put the burden on her to avoid him. They told her to stay out of his way. I don't think that's right, Your Honor, respectfully. So the no contact order that was put in place a week after the university learned of the sexual misconduct, that remained in place upon Player 1's readmission. And that no contact order had served effectively well for over, at that point, for over a year. There was the one instance at the non-academic misconduct... Well, it served well for over a year because he was expelled. So they only came into contact at the hearing. So he wasn't expelled... So the sexual misconduct occurred in April 2018, so the spring semester 2018. He wasn't expelled until the middle of spring semester 2019. And so they had been on campus, so that first semester of the fall semester 2018, and then for part of until he was expelled in the spring of 2019. And there's nothing in the record to show that Doe and Player 1 ever saw Doe, ever tried to contact Doe during that time. And then there was the time where they were both expected to be at this non-academic misconduct hearing. And there's testimony that Player 1 walked toward Doe. But it's important to remember what happened right after that, which is Doe's counsel informed someone at the university, an assistant dean who happened to be at the non-academic misconduct hearing. And that dean went straight to Player 1 and told him to mind the no contact order. And in fact, that interaction, whatever happened there, was told to the assistant district attorney who was prosecuting the case because there were bail conditions on Player 1 that if he contacted Doe during that time, he could be prosecuted for bail jumping, which is a felony. And the district attorney there didn't that there was any, didn't prosecute that, didn't think there was anything, wasn't concerned by that. And so I think the no contact order had served remarkably well. And there was also, it was not only the no contact order, but the university's response continued after readmission via the academic accommodations that continued after the readmission and every semester after that until Doe graduated. So I don't think you can look at this whole response and say this is so what the university did here. I wonder, I want to get your thoughts on this. If we were to hold that a no contact order under these circumstances is equal to deliberate indifference under Davis, is equal to doing nothing, what does that do to our Title VII jurisprudence? And what does that do to issues of other areas of the law, such as domestic violence, where no contact orders are entered in place all the time. But particularly with respect to Title VII, it seems like if an employer, if there's a, if there's a report of sex harassment and the employer does not immediately terminate the employee whom the complaint was made, if the employer just said you are to have no contact with the employee who made the allegation under, if we held that a no contact order is equivalent to deliberate indifference, wouldn't we just automatically in those cases have to find that the, that the employer created a hostile work environment and the plaintiff would get to a jury in every Title VII case? I think that's right, Your Honor. And I think, I think what the, what the, what the, what, you know, if you look at Davis, it's careful not to expand liability. Davis is very narrow. Right, it says that over and over again, that it's a very narrow, very narrow circumstance. There's a certain limited set of circumstances, it says. And I think if you even go back to, my friend on the other side likes to quote the Lobka case, which is the Title VII hostile environment case. And I think there, the, the, the, what this court did was uphold summary judgment for a defendant because there was a, I think what happened was there was a victim who worked in, in Chicago and at a building in Chicago and, and the, the, the accused, the rapist in that case, the, the, the, the victim's employer basically told the rapist's employer not to, not, not to send him to the, to the building anymore. And this court said that that wasn't, wasn't unreasonable. And under Title VII, I should say that that's just a reasonability negligence standard. Here, we have a deliberate indifference standard. But should we ignore the university's earlier finding that having Jane on campus with someone who assaulted her, a finding that was not overturned, by the way, by the university, would create a hostile environment. That was the part of the university's original finding after this extensive 13-month investigation. And then during the re-admissions process, that falls out of the picture. Should we ignore that? And should we consider that a jury might want to consider that? So, Your Honor, I think, so, so I think the hostile environment finding, that was based on the fact that the university at the time of the hearing committee's decision and then the, the, the Chancellor Blank's decision, the initial appeal, that was based on the fact that they found a preponderance of evidence at that time, that, that, that player one had sexually, had committed third-degree sexual assault toward, toward Doe. And so if you, when, when, when the new evidence came in, Chancellor Blank reviewed the evidence, came to, came to a decision, I think reasonable minds could disagree whether she came to the right decision or not. That's not the standard. And, and she found at that time that there wasn't a preponderance of evidence to find that there had been a sexual assault. Why does that matter, though, under the deliberate indifference test under Davis? Let's say the Chancellor said, I absolutely find that element three of the Davis test is met, that the, that the, the, the sexual harassment here was so severe, persuasive, objectively offensive, that it can deprive the victims of access to the educational opportunities and benefits provided by the school. I, I'm with you on that. It was satisfied here. However, a no contact order is what we're going to do to remedy the situation. Why does that not squarely fall within what is permissible under Davis, which is the school did not do nothing. It did something and Davis tells us very clearly that we do not sit, I'm looking for the exact language in Davis. In fact, as we have previously noted, court should refrain from second guessing the disciplinary decisions made by school administrators. What, why couldn't the Chancellor have said, I find that everything that Jane Doe says is absolutely 100% accurate. And as a result, I'm entering a no contact order between player one and Jane Doe and under Davis, that takes it right out from under us. There's nothing for us to do. I think that's right. I think the no contact order on its own takes us above what, what this court said is a high bar to, you know, to meet deliberate indifference. Well, this is a, I mean, this response from the university was immediate, vigorous, and sustained. It occurred over, it took place over two years. So I think the no, I think you're on to the no contact order is, does it? I think that, that, that. Go ahead. Go ahead. Well, I, I, I'm going to move on to educational judge Rovner, effects on education. So if you wanted to follow up by all means. It seems to me, you have to look at the facts of every single case. This is a pretty terrible situation. She was hoping that the university would just assign her a campus escort. Doe's council had reported that she was not doing well, that she was not eating. She was terrified of being on campus with player one. But again, beyond advising Doe to steer clear of player one, if she saw him on campus, which is, as I noted, the informal equivalent of a directive that she not have contact, regardless of whether there's this no contact directive in place and to call 9-1-1 if she needed help. University took absolutely no action. You had a 13 month investigation, and then you had a 13 day, which erased just about everything that had happened previous to that. But go ahead, Judge Jackson. While we're on the subject of Davis, nowhere in Davis did the court say that grades are required to show harassment, you know, negative effect of the harassment on someone's you allege in your brief. The court came to the opposite conclusion. It was saying grades was a necessary but insufficient. It was not saying grades were necessary but insufficient showing. It was saying that grades is not sufficient to establish liability. Because the plaintiff still had to prove other elements. So I'm concerned about that, because I'm wondering why the panel should credit your other arguments about Jane's inability to show a denial of educational opportunities when intentionally or unintentionally you misstated the long Davis. So, Your Honor, I don't think we misstated. I think what Davis said is that grades are necessary but insufficient showing. Davis did not say grades are necessary. In fact, you look at a case like Gabrielle where it was about kindergarteners. They don't even have grades in kindergarten. I think in Gabrielle the court said that the, I don't know what the, in many of the court's cases it says that, you know, it does look towards grades and it does say that, you know, if a plaintiff, you know, there's one case where the plaintiff remained on the honor roll and that was sufficient to show that there wasn't the requisite systemic effect on the plaintiff's education. I think in Gabrielle even it said that there were some psychological problems that the plaintiff suffered from the sexual harassment. And even then, I think there were. But it wasn't because of the lack of grades. I'm wondering about some of the arguments here. For example, you cite a whole list of other reasons why we should affirm the district court's order, many of them arguments you did not raise until a reply brief. At the summary judgment stage. Again, why are those not waived? So I think, Your Honor, I think you're referring to just one of our arguments. We have five, I think, we point out five deficiencies in Doe's case, each an individually sufficient reason that this court can affirm. I think what you're referencing is just one of those. The, our argument that this sexual harassment that occurred at an off-campus, privately owned apartment did not occur as required at a location that the university has substantial control over. You also argue that no future harassment occurred. The harassment was not persuasive, pervasive. Right. I don't think, I don't think my friend on the other side argues that those, that there was any waiver of those arguments here. I'm saying I don't see them anywhere other than your reply brief at the summary judgment stage. Okay. Well, I, as to the first one, I want to say that this, this was, this was decided on cross motions below. And so if you look at, we did raise the, we did raise the, our, the first argument, the no control over environment. In a footnote in your opening. So we referenced in, in, in our, in, in the body of our brief, we, we, we set out the law that says that, you know, in order for it to be held liable for under Title IX, there needs to be a control, the university has to control the environment under which the harassment occurs. Well, the university's control or lack of control over the site of the assaults, relevant to her claim, doesn't our opinion in LAPCA make very clear. University's duty to do arises from the resulting hostile environment on campus, regardless of where the assault, the assault itself took place. I mean, doesn't the fact that the university conducted an investigation into the incident, held a hearing as to what occurred off campus, demonstrate that it had authority to determine whether Player 1 should remain on campus, I mean, on campus. I think it shows that the school had disciplinary authority over, over, over Player 1, but, but Title IX law requires, and LAPCA, Your Honor, is a Title VII case. So that, that's a, that's a workplace case. Wouldn't we have to overrule LAPCA if we, if we found a favorite Jane Doe, we'd have to overrule LAPCA and numerous of our other Title VII holdings. Because we'd have to find that a no contact order was deliberate indifference or could amount to deliberate indifference. So all of our Title VII holdings are out the window, I think. Yeah, I, I, I agree with you. LAPCA's gone. I think, I think the no contact order was sufficient here to show that the school wasn't deliberately indifferent. Not just a no contact order, but a no contact order. The Wisconsin Administrative Code makes clear that students can be disciplined for committing criminal offenses, including sexual assaults. That was the basis for the university's investigation and decision to expel Player 1 in the first instance. So the notion that the university lacked control of the premises where the assault occurred, in my view, is pretty much a red herring. The assault nevertheless had consequences for Doe as a student present on campus, along with her rapist. And the university had a duty under Title IX to recognize those consequences and to take all appropriate action to mitigate them, in my view. So, Your Honor, I think that the only thing, what the university had to do here is just not respond in a way that was so clearly unreasonable that it constituted an official decision to permit discrimination. That's, that's straight out of this court's CS versus Madison Metro decision. They didn't have to do the reasonable thing. And I think they did more, they did what was, you know, more than reasonable here, but all they had to do to avoid Title IX liability is not react in a way that was so clearly unreasonable as to permit sex discrimination at the university. And I see my time is up. My goodness, it really is. But if anyone has any more, if anyone has any more questions. No. Okay. All right. We're going to give Miss Brodsky the extra time. Does our timekeeper know how much extra time that was? I'm listening to the argument, not keeping. Oh, my goodness. Well, there you have it, Miss Brodsky. Go ahead. Oh, my goodness. Thank you, Your Honor. I'd like to talk a little bit about why the school's response in this case was so different from the other cases on which the defendant relies. And I think it's important to remember here that a jury could find not that the school came to a different decision on the merits, but a different decision on the optics. And that makes it very different from case, a case like Johnson, where a school received reports that a student had sexually assaulted two classmates whose families would not allow them to participate in the school's investigation. So the school reasonably said, nothing we can do here. It's different than Jack Kett, which without trivializing the harm there, was middle schoolers engaged in verbal harassment. The school engaged in an age-appropriate response of emailing all the eighth grade boys to say, we don't tolerate this kind of response, imposing a short suspension and facilitating a mediation between the victim and the harasser. It's also very different from Lopka, where there is no suggestion that the school, excuse me, believed that the victim was telling the truth. But in Johnson, we said very specifically in Johnson, we need not resolve these issues because assuming the entire course of conduct in this case amounts to severe sexual harassment, NESC was not deliberately indifferent to the harassment. Isn't that your problem here? If we assume everything that Jane Doe said happened, everything, right down to her missing classes, going home to Chicago on the weekend, the test is still one of deliberate indifference. The university has to do nothing, and the university did at least something here. They conducted an investigation, then they entered a no contact order. Your Honor, this court has never said that a school need only do more than nothing. That would be inconsistent with this court's 1983 case law. Also, it would create a circuit split. This court would be the first one to hold that. I'd also like to— How so under Davis? What other court has held that the school must—is there any case that says a school must provide an escort to a student, must do exactly what the student is requesting? Any case that says that? No, Your Honor, but there's a big— Wouldn't we just be basically ignoring Davis? No, Your Honor, because there's a big difference between whether the school just did more than nothing and whether the school acceded to every demand of the victim. So it's absolutely true that the university did not have to say, Jane, what do you want? Here it is on a platter. But they did have to choose from among the reasonable options, and they didn't do so here. And they did. No, they chose. You disagree with their choice, but doesn't Davis tell us that is not the responsibility of the courts? Your Honor, I don't think that that's right, and I think that helpful here are cases like Zeno from the Second Circuit, Hurley from the Fourth Circuit, and Vance from the Sixth Circuit, where schools tried something out, turned out that it didn't work. But it did work here. Your Honor, it— They never had any contact. Your Honor, before the hearing, the reason that they didn't have any contact is that Jane's lawyer physically stepped in front of her so that Player One couldn't touch her. That was at a hearing, right? And that's according to Jane, one's lawyer. That's at a hearing, right? But on the campus, they had no contact whatsoever. They never saw each other. Your Honor, it is—I think that the Connecticut case, Kelly here, is helpful, where the court talked about when a victim so seriously sacrifices her own education in order to avoid running into the person who assaulted her. The school doesn't get credit for that. And here, Jane said whenever she saw a group of athletes wearing that uniform, she walked away. So for all we know, she avoided some pretty serious problems. So I'm with you on all that. I'm with you on all that. I don't think that's the problem in the case, though. I think the problem in the case for you is Davis's language that says if the university does something, if they don't ignore the problem, there's no Title IX violation. We said that in Madison. We said that in Johnson. And what does that do—I mean, don't we have to overrule LAPCA? I'll ask the same question here. If the employer doesn't fire the employee because the, you know, the alleger says fire the employee and no contact order isn't good enough, they get to a jury. Sure, Your Honor. To first say neither Davis nor CS say that all a school has to do is more than nothing. As to LAPCA, I think there are a couple of really important distinctions here. In LAPCA, there was no finding that the sexual assault had occurred. We're also talking about a more—frankly, in LAPCA, the school—excuse me, the workplace did more by making sure that the rapist and his brother weren't going to be able to come into the victim's workplace. We're also talking about a much lower risk of the victim running into the assailant in the first place, so she actually— In what case? In LAPCA. Were there 70,000 students at the University of Wisconsin? Is that about right? Your Honor, University of Wisconsin is a big campus. To put that into comparison, though, the campus there is— And he spends how many hours a day on the football field? Ten? I couldn't speak to that, Your Honor, but I would say that in the campus—the Wisconsin campus is smaller than the Kansas State campus at issue in Farmer. And actually, in LAPCA, they didn't work in the same building. She worked across the street from this courthouse, and her rapist and his brother worked at O'Hare, and yet the chance that they would come visit her was enough to create a hostile environment that necessitated a school response. And, you know, I think that at the end of the day, to permit a school to do—put on a sham investigation and have that count to avoid deliberate indifference would gut Title IX. It would mean that all schools have to do is check a couple boxes, sacrifice a victim's education, and that's enough to satisfy the law. I still—before we end, can you—I mean, Davis says—and I'd like you to respond to this—here's the Davis test for deliberate indifference. I'm going to quote from Davis, and I'd like you to respond to this. Failure to respond, remain idle—bear with me here—deliberately ignore, made no effort whatsoever either to investigate or to put an end to the harassment. So where did the university fail under the Davis test? Your Honor, the facts of Davis are different than the facts— No, wait, wait, wait. Where did the university fail under the Davis test specifically? The school's response was clearly unreasonable when it purposefully disregarded a finding that it had made in order to appease donors and fans, knowing that that would come at the cost of their— Where is the evidence that they did it to appease fans? It's not admissible at trial. You're just speculating. Your Honor, I don't think that that's true. I think that there is— Where is the admissible evidence? What witness said that? Your Honor— When you took depositions, what witness said that? Your Honor, I think that there are many ways for a plaintiff to—or a defendant to establish a fact without having a witness from the other side say— There's witnesses and there's documents. Yes, Your Honor, and we have documents showing— No, you have documents, a Post-it note that says, we're not waiting for transcripts because we know what happened at the trial. Your Honor, there's more than that. We have—that's not what the Post-it note said. The Post-it note said that they—the point there was that they didn't—the school had actually requested the transcript from the prosecutor. And the prosecutor said it would take too long, and the school said, we really don't even need them. Well, the prosecutor said, here's how long it would take, and what the school said is, we don't have time for that. Right. And so that's a little bit different. But I think that there was plenty of evidence, including the fact that without—and she called Jane. I think that— What's the relevance of that? I think it shows that the school's focus here was on making sure that its donors were happy and not on the victim's education. And I think that, you know, we also looked to the fact that, you know, if the school was trying to get this right, they would have talked to Jane. And I just want to correct the university. There's nothing in the record that suggests that the reason that the school didn't include Jane is that the chancellor thought that she was legally prohibited from doing so. That's not true legally. Yeah, but we would have to find that the school was deliberately indifferent by following the law. Imagine that. Imagine a decision from this court— We would have to find there's a jury question. Yes. And the jury is entitled to sort this out. A jury's entitled to find that the university is deliberately indifferent by following the law. That's what this court would have to say. I don't think that's correct, Your Honor. I think what it would find is that the school following a state regulation doesn't excuse it from following Title IX because, again, there's nothing— They could be clearly unreasonable, deliberately indifferent under Davis. Your Honor, I wonder if a case like the Tenth Circuit Simpson is helpful here, which shows that the fact that a school is following a written policy or an official policy of the school doesn't—that's not a defense for the school. That doesn't mean that the school is doing the right thing. And I think it's, again, important to note that there was actually no conflict between the state regulation here and the federal law, as is clear from the Title IX compliance expert at the school saying, you need to talk to Jane. And I realize that I am well over my time, but I do just want to reiterate that the university's reading of the law would gut Title IX, essentially ensuring that schools can check boxes and that victims need to be effectively entirely excluded from their education or put themselves at considerable risk for ongoing harassment in order to be protected by the law. Thank you. Okay. Is that it? Yes. I'm happy to keep going. I'll follow your lead, Your Honor. Gosh, yes. Wow. Okay. Thank you. Thank you very much. And thank you very much, Mr. Whitney. We're going to take the case under advisement.